# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JOHN RICHARD LUFF, | DOCKET NUMBER |
| Appellant, | DA-0752-23-0318-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: February 19, 2026 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Daniel Patrick Meyer, Esquire and Lachlan McKinion, Esquire, Washington, D.C., for the appellant.

Edith Moore McGee, Esquire, Washington, D.C., for the agency.

Kevin Bruen, Esquire, Alameda, California, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to REVERSE the administrative judge's findings sustaining specifications 2 through 5 and 7 through 34 of charge 2, and FIND that the appellant's conduct still merits removal, we AFFIRM the initial decision.

## BACKGROUND

The agency removed the appellant, a U.S. Coast Guard (USCG) Marine Inspector, in May 2023. Initial Appeal File (IAF), Tab 8 at 37, 39-43, 88-105. Pursuant to a 2020 investigation, the USCG Investigative Service (CGIS) determined that the appellant, among other things, accessed thousands of web addresses promoting white supremacist, antisemitic, and misogynist content, and disseminated some such content to himself and other USCG personnel. IAF, Tab 8 at 111-129, Tab 20 at 25. The charges the appellant was removed for, which stemmed from the CGIS investigation and an ensuing administrative investigation, included charge 2, unauthorized personal use of Government equipment in violation of regulations, for using his Government computer to access personal shopping sites (specification 1) and emailing from his Government account to his personal account or other agency personnel materials

or links to sites described by the agency as, among other things, white supremacist, misogynist, alt-right, or antisemitic (specifications 2 through 38). IAF, Tab 8 at 89-95. The appellant was also charged with two specifications of lack of candor (charge 4), based on statements he made when interviewed during the administrative investigation. *Id.* at 101. The appellant appealed his removal to the Board. IAF, Tab 1.

After holding a hearing, the administrative judge sustained the appellant's removal, sustaining all specifications of charges 2 and 4.[2] IAF, Tab 24, Initial Decision (ID). In sustaining specifications 2 through 38 of charge 2, the administrative judge concluded that the appellant violated Commandant Instruction (COMDTINST) 5375.1D, § 7.a.(2), which prohibits "[i]ntentionally creating, copying or transmitting any materials or communications that may be considered hate incidents or discriminatory to fellow employees or to the public." ID at 11-15; IAF, Tab 9 at 325. The administrative judge also sustained both specifications of charge 4, lack of candor, finding that the alleged statements were implausible and known by the appellant to be incorrect when he made them. ID at 16-19. After denying all of the appellant's affirmative defenses, the administrative judge determined that the agency proved nexus and the reasonableness of its penalty. ID at 19-32.

The appellant filed a petition for review in which he argues, among other things, that the COMDTINST 5375.1D, § 7.a.(2) is vague and that he nonetheless did not violate that section because his conduct did not meet its definition of "illegal discrimination." Petition for Review (PFR) File, Tab 1. The agency filed a response, to which the appellant replied. PFR File, Tabs 3-4.

---

[2] The administrative judge did not sustain charge 1, conduct unbecoming, and charge 3, unauthorized use of official time. IAF, Tab 24, Initial Decision at 3-7, 15-16. Neither party challenges these findings on review, and we thus do not disturb them.

**ANALYSIS**

<u>We reverse the administrative judge's findings sustaining specifications 2 through 5 and 7 through 34 of charge 2.</u>

The appellant argues that COMDTINST 5375.1D, § 7.a.(2), which, again, prohibits "[i]ntentionally creating, copying or transmitting any materials or communications that may be considered hate incidents or discriminatory to fellow employees or to the public," is vague because the term "discriminatory" is undefined.[3]  PFR File, Tab 1 at 9; IAF, Tab 9 at 325.  But as the appellant recognizes, the section goes on to define "illegal discrimination" as "any intentional action or omission that results in the adverse treatment of a person because of that person's race, color, religion, national origin, disability, handicap, age or gender, including sexual harassment or intentional actions or omissions in reprisal."  PFR File, Tab 1 at 9; IAF, Tab 9 at 325.  The appellant then argues that the meaning of "any intentional action or omission that results in the adverse treatment of a person" is unclear, but that nevertheless, there was no evidence of such in this case.  PFR File, Tab 1 at 9-10.

The structure of § 7.a.(2), which defines "illegal discrimination" immediately after the prohibition of acts involving "discriminatory" materials or communications, indicates that by "discriminatory," the section meant "illegal discrimination."  IAF, Tab 9 at 325.  The appellant's claim that "discriminatory" is undefined raises the question of what type of discrimination other than the "illegal" kind he expected the instruction to define.  We thus see no vagueness issue in the use of the word "discriminatory."  *See Unites States v. Culbert*, 435 U.S. 371, 374 (1978) ("[W]e need not concern ourselves with these potential constitutional difficulties because a construction that avoids them is virtually compelled by the language and structure of the statute.").

---

[3] The appellant also raises an overbreadth claim regarding COMDTINST 5375.1D, PFR File, Tab 1 at 8, but because he does not explain it, we do not address it.

We need not answer the appellant's claim that "illegal discrimination" is also vague, however, because we agree with the appellant that no evidence shows that his conduct constituted "illegal discrimination" as defined in § 7.a.(2), i.e., "result[ed] in the *adverse treatment* of a person because of that person's" protected characteristic. PFR File, Tab 1 at 9-10; IAF, Tab 9 at 325 (emphasis added). None of the individuals interviewed to whom the appellant emailed links or materials claimed to have suffered anything that can be interpreted to constitute "adverse treatment," IAF, Tab 20 at 32-36, and there is no indication of such adverse treatment of any person otherwise in the record.

Nevertheless, § 7.a.(2) prohibits "transmitting any materials or communications that may be considered *hate incidents or discriminatory* to fellow employees or to the public." IAF, Tab 9 at 325 (emphasis added). "Hate incident" is defined in § 7.a.(2) as "any intentional act (conduct or speech) of intolerance committed against a person, a group of individuals, or property which is motivated, in whole or in part, by the offender's bias against a race, color, religion, sex, national origin, disability, age, or sexual orientation and which is intended to or is more than likely than not to have the effect of intimidating others or inciting others to similar conduct." *Id.* The appellant does not argue that the materials he emailed may not be considered "hate incidents." The appellant thus could only have committed the alleged misconduct in charge 2, specifications 2 through 38 if his conduct involved "transmitting any materials or communications that may be considered hate incidents." Because the administrative judge did not make explicit findings regarding whether the appellant's conduct fit this standard, we do so now.

Of the 37 specifications of charge 2 implicating § 7.a.(2), i.e., specifications 2 through 38,[4] we find that the agency submitted evidence

---

[4] Though none of these specifications specifically cite § 7.a.(2), they describe conduct which would only be prohibited under that section of COMDTINST 5375.1D. IAF, Tab 8 at 89-95; Tab 9 at 322-28.

sufficient to sustain only five—specifications; those being specifications 6 and 35 through 38. The materials the appellant is charged with emailing in these specifications are included, in whole or in part, in the record.

In support of specification 6, the CGIS report contains the following excerpt of the article the appellant is charged with emailing a link for in the specification: "Decline is irreversible. The relentless occupation of the West by hordes of Muslims and Africans is an expression of White male decadence and effeminacy. Only out of the coming chaos and violence will strong White men rise to resurrect the West." IAF, Tab 8 at 90, 113, 224.

In support of specification 35, the CGIS report includes a copy of the article the appellant is accused of emailing titled "Blacks, Jews and You," which laments the prominence of Jewish individuals in the media and questions the truth of the Holocaust. *Id.* at 95, 225-32. Similarly, the CGIS report includes the evidence necessary to specification 36's charge that the appellant emailed a critique of the Green New Deal that recommended that "[t]he right . . . use economic sanctions to stop the n*gs from desertifying their continent via overgrazing." *Id.* at 95, 202-05. Similar evidence was found in the CGIS report supporting specification 37's charge that the appellant emailed a document about the adverse effects of fluoride containing the line: "so Lord knows what other flavorless toxic chemicals the jews are putting into you and your family." *Id.* at 95, 154-56. Finally, one of the articles at issue in specification 38, titled "Fertility and corporal punishment," ties corporal punishment of women positively to fertility rates, minimalizes the rape of female children by adult males, and exhorts the following: "we have to reject and dismiss consent culture . . . The very concept of rape and consent attributes unrealistic agency to women. As in the old testament, we should give female consent as little moral and legal weight as possible . . ." *Id.* at 95, 209-20.

We find that the above-described materials constitute "hate incidents" under § 7.a.(2) because of the authors' respective biases against Muslims,

Africans, non-White Americans, Jewish people, African Americans, or women, and the likelihood of intimidating individuals in such groups. We thus find that the agency proved by preponderant evidence the conduct in these specifications.

In contrast, the only evidence the agency offered to prove the contents of the materials at issue in the remaining specifications of charge 2, specifications 2 through 38, was—other than an ambiguous meme relating to specification 28— the CGIS report's characterizations of the materials, which lacked sufficient detail or explanation to support findings that "hate incidents" were involved. For instance, the CGIS report described several websites the appellant emailed links to as white supremacist, alt-right, or misogynistic, among other labels, in some cases using such labels not to describe the materials themselves but, less relevantly, websites hosting the materials or their authors. *Id.* at 111-26. But the CGIS descriptions contained no excerpts or other objective indicia which would enable us to determine that the materials qualified as "hate incidents." We thus reverse the administrative judge's findings sustaining the remaining specifications of charge 2 implicating § 7.a.(2), i.e., specifications 2 through 5 and 7 through 34.[5]

<u>The sustained misconduct still merits removal.</u>

As set forth above, the administrative judge sustained five specifications under charge 2 and both specifications under charge 4. The administrative judge did not sustain charge 1 or 3. When not all of the charges are sustained, the Board will carefully consider whether the sustained charges merited the penalty imposed by the agency. *Hoofman v. Department of the Army*, 118 M.S.P.R. 532, ¶ 17 (2012), *aff'd*, 526 F. App'x 982 (Fed. Cir. 2013). The Board must also consider that a majority of the specifications under charge 2 were not sustained. *Cf. Byers v. U.S. Postal Service*, 78 M.S.P.R. 456, 463-654 (1998) (stating that

---

[5] The appellant's arguments on review provide no basis to disturb the administrative judge's findings sustaining specification 1 of charge 2 or either specification of charge 4.

when all of an agency's charges are sustained, but not all of the underlying specifications, the agency's selected penalty is entitled to due deference and should be reviewed to determine its reasonableness for the sustained specifications).

The appellant does not challenge the administrative judge's penalty analysis on review, including her analysis of the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981),[6] in which we discern no error. We find that, even having reversed the administrative judge's findings sustaining 32 specifications of charge 2, her *Douglas* factors analysis is still apropos and the sustained charges still warrant removal. We make this finding because the essence of the sustained charges remains intact—as evidenced by the record, including the appellant's own hearing testimony, indicating that the appellant emailed the "hate incidents" described above from his Government computer to himself for further reading or to others, then lacked candor when questioned about his actions during an investigation. We find that the factors favoring mitigation—including the appellant's lack of prior discipline, strong job performance, and lengthy Federal service—are outweighed by the sum of (1) the seriousness of his conduct in light its intentionality, repetitiveness, and the nature of the "hate incidents" at issue, (2) his position's interaction with the public, (3) the damage his offenses inflicted on his supervisors' confidence in his ability to perform his duties, (4) his knowledge of the policies at issue, and (5) his lack of rehabilitative potential, as demonstrated by his lack of candor. *See id.* We thus sustain the appellant's removal.

---

[6] In *Douglas*, the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse actions.

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.